1999 UT 111

**Janice L. DeBRY, Plaintiff and Appellant,**

v.

**Mary Lou GODBE, Defendant and Appellee.**

No. 970494.

Supreme Court of Utah.

Dec. 28, 1999.

Bel–Ami De Montreux, Salt Lake City, for plaintiff.

Gordon L. Roberts, James T. Blanch, Salt Lake City, for defendant.

STEWART, Justice:

¶1 Janice DeBry, a party in a divorce proceeding, sued Mary Lou Godbe, an attorney who represented Mr. DeBry in the same proceeding, for defamation and intentional infliction of emotional distress. Her claim was based on a letter concerning out-of-court occurrences that Godbe wrote to Judge Wilkinson after the close of evidence in the divorce case, while the case was pending a final decision. The trial court granted Godbe's motion for summary judgment, ruling that the letter was a privileged communication. We affirm.

## I. BACKGROUND

¶2 Mary Lou Godbe and Kent T. Yano represented Robert J. DeBry in a divorce proceeding between him and Janice L. De-Bry. Clark W. Sessions represented Ms. DeBry. On August 14, 1995, during the divorce trial, an unidentified person called and spoke to an attorney in Mr. DeBry's law office. The caller stated that he was aware of a death threat against Mr. DeBry and that Ms. DeBry was somehow involved in that threat. The next day, Yano informed Judge Homer F. Wilkinson, the judge presiding over the divorce case, of the death threat. The attorney who received the call at Mr. DeBry's office was questioned under oath that day, and a transcript of his testimony was entered in the record of the divorce.

¶3 After the close of evidence and while Judge Wilkinson had the case under advisement, apparently someone, using some type of projectile, broke the pane of a sliding glass door at Godbe's house. With the recent death threat against Mr. Debry in mind, Godbe sent Judge Wilkinson the following letter, describing the glass door incident and a prior incident that had occurred near the beginning of the divorce trial.

Dear Judge Wilkinson:

This is a new one for me in all respects, but at the urging of my friend and occasional personal counsel, John B. Maycock, Esq., I am writing to advise the Court of two recent incidents.

As the Court is aware and has previously been made part of the record in this case, a report concerning a threat against the life of my client, Robert J. DeBry, was received by another lawyer in Mr. DeBry's office on August 14, 1995, while trial herein was proceeding. That unsubstantiated report included an allegation that Mr. De-Bry's wife, the plaintiff in this case, was involved in that death threat.

As you know, the caller reporting the threat was interviewed under oath the following day. A transcript of that testimony has been filed with the Court.

Rightly or wrongly, I cannot help but wonder if there is any relationship between the threat against Mr. DeBry's life and two distressing events which have recently occurred in my own "space." While at present I have no factual basis whatsoever for believing that there *is* any such relationship, John Maycock has persuaded me that I should report to the Court the following events:

1. On Saturday, July 29, 1995, two days before commencement of trial in this case, I discovered to my dismay that my telephone lines were inoperative. According to U.S. West, on July 25, 1995, a female using my name ordered the cancellation of my phone service, effective July 29.

I reported this incident to the Salt Lake City Police Department on July 29, 1995, Case No. 95–110149. The follow-up investigating officer, Detective Ron Nelson, asked if I had a "gut" reaction about who might have pulled this malicious prank. I told Detective Nelson in response to that

question that I thought it was probably the plaintiff in this case. Again, I had no evidence then and have none now which would support that statement concerning my "gut" reaction about that occurrence.

2. Yesterday evening at about 5:11 p.m. while talking on the telephone in my kitchen with Joane Pappas White, Esq., of Price, Utah, I heard an explosion, as did Ms. White. I saw one of the panels of the 8' × 8' Pozzi tempered glass sliding door in my kitchen beginning to disintegrate, with the breakage radiating from a central point. Upon closer inspection, I saw that the outer but not the inner pane of this three-quarter inch insulated glass panel had been broken. I reported this incident to the Salt Lake City Police Department, Case No. 95–125251.

The young officer who was dispatched to investigate this event was unable to determine a cause for this breakage, but had a crime lab photographer shoot some pictures. This morning, the service manager for Pozzi windows, Mr. Marc Draper, inspected the door at my request. Mr. Draper said that in his experience the breakage in my door would probably not have been caused by anything other than a projectile of some sort.

Sincerely yours,

/s/

Mary Lou Godbe

In addition to sending the letter to Judge Wilkinson, Godbe faxed copies to Mr. DeBry and to attorneys Sessions, Yano, Maycock, and Joane Pappas White, Esq., the person with whom Godbe was speaking on the telephone when the glass door was broken. On the motion for summary judgment, Godbe submitted White's affidavit, which was undisputed, stating that she had not received a copy of Godbe's letter, even though Godbe had attempted to fax it to her.

¶ 4 Ms. DeBry's attorney, Clark Sessions, responded by letter to Judge Wilkinson the following day, stating that Godbe's letter was an attempt "to demean, libel and defame Ms. DeBry"; was "an effort to influence the Court's pending consideration" of the divorce case; and "should be ignored and dismissed out-of-hand." Sessions sent copies of his letter to Yano and Godbe.

¶ 5 Based solely on Godbe's letter to Judge Wilkinson, Ms. DeBry sued Godbe for defamation and intentional infliction of emotional distress. Godbe moved for summary judgment on the ground that, even if defamatory, the letter was privileged under the judicial proceeding privilege.[1] The court granted Godbe's motion.

¶ 6 On this appeal, Ms. DeBry argues that Godbe was not entitled to the judicial proceeding privilege or any other privilege under the law of defamation. Therefore, she argues the trial court erred in ruling against DeBry's claim of intentional infliction of emotional distress.

¶ 7 The facts pertaining to whether the judicial proceeding privilege applies to Godbe's letter are undisputed. Whether that privilege applies to her letter is an issue of law we review for correctness. See Price v. Armour, 949 P.2d 1251, 1254 (Utah 1997); Allen v. Ortez, 802 P.2d 1307, 1309 (Utah 1990).

## II. JUDICIAL PROCEEDINGS PRIVILEGE

¶ 8 To establish her claim for defamation, the plaintiff must demonstrate that (1) the defendant published the statements in the letter concerning Ms. DeBry; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages. See West v. Thomson Newspapers, 872 P.2d 999, 1007–08 (Utah 1994).

¶ 9 The trial court held that the judicial proceeding privilege applied to the letter and

---

1. In her motion for summary judgment, Godbe argued that quasi-judicial immunity, as well as the judicial proceeding privilege, common interest privilege, and fair comment privilege, applied to immunize the allegedly defamatory statements in her letter. The trial court held that the judicial proceeding privilege applied and therefore did not discuss the applicability of the other defenses. Since we affirm the trial court's holding on the judicial proceeding privilege, it is unnecessary to examine the other defenses.

that the defendant was therefore entitled to summary judgment on the defamation claim. For the purpose of this appeal, therefore, we assume that the plaintiff could establish a prima facie case that the defendant published the statements in the letter, the statements were false, they were published with the requisite degree of fault, and the statements resulted in damages to the plaintiff.

¶ 10 Under the law of defamation, false and defamatory statements are not actionable if they are protected by a legal privilege. A number of legal privileges are recognized in circumstances where communication must be wholly open, frank, and unchilled by the possibility of a defamation action. This is so even though the reputation of a person may be harmed by such statements. *See* W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 114, at 815 (5th ed.1984) (hereinafter *Prosser & Keeton*). The common law judicial proceeding privilege is intended to promote the integrity of the adjudicatory proceeding and its truth finding processes. To that end, the privilege facilitates the "free and open expression by all participants ... [which] will occur only if they are not inhibited by the risk of subsequent defamation suits." *Allen,* 802 P.2d at 1311.

¶ 11 To establish the judicial proceeding privilege, the statements must be (1) "made during or in the course of a judicial proceeding"; (2) "have some reference to the subject matter of the proceeding"; and (3) be "made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Price,* 949 P.2d at 1256 (citation omitted); *see also Allen,* 802 P.2d at 1312 n. 8, 1313.

¶ 12 First, plaintiff contends that the trial court erred in ruling that the defendant's statements were made during or in the course of a judicial proceeding. She asserts that because the divorce case before Judge Wilkinson was under advisement, the letter was not necessary to the investigation of the case or to explication of any matter at issue in the divorce.[2] As authority for her argument, Ms. DeBry relies on the following statement from *Beezley v. Hansen:*

> "The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and in other communications preliminary thereto. The institution of a judicial proceeding includes all pleadings and affidavits necessary to set the judicial machinery in motion. The conduct of litigation includes the examination and cross-examination of witnesses, comments upon the evidence and arguments both oral and written upon the evidence, whether made to the court or jury."

4 Utah 2d 64, 66, 286 P.2d 1057, 1058 (1955) (quoting *Restatement of the Law of Torts,* Vol. III § 586, at 29–30).

¶ 13 Plaintiff argues that the statements in the Godbe letter do not fall within any of the examples stated in *Beezley* of when the judicial proceeding privilege applies. *Beezley,* however, did not intend to definitively list all circumstances in which the privilege applies. *Beezley* addressed only pre-trial statements. Neither *Beezley* nor the purpose of the privilege suggest that the privilege should not apply to the type of post-trial statement made in the instant case.

¶ 14 Indeed, the requirement that the defamatory statement must be made in the course of a judicial proceeding requires a broad interpretation of the term "judicial proceeding." *See Allen,* 802 P.2d at 1312 n. 9; 50 Am.Jur.2d *Libel & Slander* § 232 (1995). The privilege applies to "every step in the proceeding until final disposition." *Prosser & Keeton* § 114 at 818–19. Numerous types of rulings and events that occur post-trial can affect the final disposition of a case, including the possible intimidation of a

---

2. Plaintiff makes two other arguments as to why the letter was outside the course of the judicial proceeding: (1) Godbe sent the letter to two persons who were not involved in the DeBry divorce case, and (2) the letter referred to speculative, irrelevant facts. Neither argument bears on the "in the course of judicial proceeding" issue and will not be discussed in this context. However, the arguments do relate to issues we address later in this opinion and will be addressed therein.

party, an attorney, or a judge. Godbe's letter raised the possibility of intimidation with respect to the outcome of the divorce case and was made in the course of a judicial proceeding. To rule otherwise would tend to undermine the policy that supports the privilege—to buttress the truth-finding function of adjudicatory proceedings, *see Price,* 949 P.2d at 1256—that is as necessary during post-trial events as it is before or during trial.

¶ 15 The second requirement of the judicial proceeding privilege is that alleged defamatory material be related to the proceeding. DeBry argues the letter does not relate to the divorce action and was written to improperly influence the judge.

¶ 16 A statement need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply. The requirement is that a statement have "some relationship to the cause or subject matter involved." *Wright v. Lawson,* 530 P.2d 823, 825 (Utah 1975) (citation omitted). Doubts should be resolved in favor of the statement having reference to the subject matter of the proceeding, *see Prosser & Keeton* § 114, at 818, because of the important purpose the privilege serves. The trial court ruled that Godbe's statement was germane to the integrity of the divorce litigation. That court stated:

> The integrity of the judicial process is a significant part of a judicial proceeding and any occurrence which could compromise the integrity of the process cannot be overlooked. The type of incidents experienced by [Godbe] in her capacity as a participant and officer of the court has such a potential. The interest of justice as well as the integrity of the judicial process are ill-served if an officer of the court experiences intimidation, harm, or vandalism because of her role in a judicial proceeding.

¶ 17 We agree. The letter clearly relates to the integrity of the judicial proceeding. That alone satisfies this second element. In particular, however, the integrity of the divorce case was an issue because of the death threat to Mr. DeBry. The threat had been discussed in the divorce trial, and a transcript of an interview relating the known facts surrounding the threat was entered in the court's record. Godbe's letter discussed that threat, and connected it with the two events that precipitated her letter. Godbe rightfully acknowledged she possessed no proof linking these events with the divorce action. In fact, for purposes of this appeal, we must assume there was no actual connection. *See Bowen v. Riverton City,* 656 P.2d 434, 436 (Utah 1982). However, whether or not the "pranks," as Godbe characterized them, were in reality related to the trial does not change the fact that Godbe could reasonably have thought that the incidents were directed at her as an attorney in this case. Both events occurred during the course of her participation in the action. And, given the death threat, Godbe was aware that someone was angry at her client, Mr. DeBry. It was reasonable for Godbe to be concerned that those events were connected and that the trial judge should be aware of the related events in the letter. In short, the content of the letter had "some relationship to the cause or subject matter involved." *Wright,* 530 P.2d at 825.

¶ 18 Plaintiff asserts that under *Wright,* defendant's letter had no reference to the subject matter of the proceeding. *Wright* held that an attorney's letter did not relate to pending or anticipated litigation, even though the parties were engaged in a lawsuit, because the letter discussed matters outside the scope of that lawsuit and threatened separate legal action only if current demands were not met. *See id.* at 825–26. That is not the case here. Godbe's letter discusses the possibility that the integrity of the proceedings in the divorce case might be compromised. As stated, that had previously become an issue in those proceedings.

¶ 19 Ms. DeBry also argues that Godbe's letter itself was the real threat to the integrity of the divorce case because it was sent after the case was taken under advisement and could have been sent only to influence the judge against her position in the case. We disagree. The tone of the letter does not lend itself to that proposition. For example, Godbe admitted she had no "hard" evidence supporting her suspicion. She also indicated some hesitancy in even sending the letter,

having done so only after obtaining the advice of her lawyer and friend, John Maycock. In our opinion, the letter, on its face, was intended only to report the occurrence of the "pranks" which might have had some intimidating effect on an attorney in litigation, especially given the reported death threat made against Mr. DeBry.

¶ 20 The third and final element of the judicial proceeding privilege requires that the statement be made by one acting in his or her capacity as judge, juror, witness, litigant, or counsel. *See Price,* 949 P.2d at 1258. In this case, it is undisputed that Godbe was Mr. DeBry's attorney. In addition to representing a party to a lawsuit, attorneys act as officers of the court. *See, e.g.,* Utah Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities (1998) ("A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."). As such, Godbe was obligated to inform the court of events she felt affected the integrity of the case. That she did so here was within her capacity as an officer of the court.

¶ 21 Case law generally holds that communications that are otherwise privileged lose their privilege if the statement is excessively published, that is, published to more persons than the scope of the privilege requires to effectuate its purpose. *See Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 58 (Utah 1991) (stating that the "plaintiff can show abuse of the privilege by proving that . . . the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it"); *see also Sullivan v. Birmingham,* 11 Mass.App.Ct. 359, 416 N.E.2d 528, 532 (1981); *Vahlsing Christina Corp. v. Stanley,* 487 A.2d 264, 267 (Me.1985); 50 Am.Jur.2d *Libel & Slander* § 299 (1995). The purpose of the rule, in the context of this case, is to prevent abuse of the privilege by publication of defamatory statements to persons who have no connection to the judicial proceeding. Ms. DeBry argues that Godbe's publication of the letter was excessive and, therefore, the judicial proceeding privilege is inapplicable. Conversely, Godbe argues that the excessive publica-

tion waiver has no application to this case. The gist of her argument is that the judicial proceedings privilege is absolute, which means the privilege cannot be destroyed by evidence of malice. Godbe claims that "malice includes the doctrine of 'excessive publication' under Utah law" and quotes *Direct Import Buyers Ass'n v. KSL, Inc.,* 538 P.2d 1040, 1042 (Utah 1975) as support. In *Direct Import Buyers,* we defined malice for the purposes of that case as "an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive." *Id.* To the extent that statement suggests excessive publication constitutes malice, we reject it. Malice sets a mens rea standard that mere excessive publication will not necessarily reach in any given case. Therefore, excessive publication is only evidence of malice, not a substitute or equal thereof. Accordingly, Godbe's argument fails, and we will analyze the facts of this case under the excessive publication doctrine.

¶ 22 On the undisputed facts, the publication was not excessive. The letter was published to six people. Four had direct involvement in the divorce case: Judge Wilkinson, the trial judge; Sessions, Ms. DeBry's attorney; Mr. DeBry, a litigant; and Yano, Godbe's co-counsel. Ms. DeBry concedes that publication of the letter to these people was allowable because they were directly involved in the judicial proceeding.

¶ 23 However, Godbe also attempted to fax the letter to Joane Pappas White, the person speaking with Godbe on the phone when the glass-breaking incident mentioned in the letter occurred. White did not receive the letter. The requirement of "publication" means that the defamatory statement be communicated to a third person and that the third person read and understand the statement. *See* 50 Am.Jur.2d *Libel & Slander* §§ 250–51 (1995). White's uncontested affidavit, submitted with Godbe's motion for summary judgment, stated that White did not receive Godbe's fax and did not read it. It was therefore not published to her and was not excessive.

**986**

¶ 24 Godbe also sent the letter to John Maycock, her lawyer and friend. This was to be expected considering that Godbe had sought Maycock's counsel regarding the proper course of action to pursue in light of her suspicions. Maycock advised Godbe to inform the trial judge about the incidents. Under the circumstances, the fact that Godbe sought the advice of her lawyer regarding a matter relevant to the case sufficiently connects Maycock to the judicial proceeding so as to defeat Ms. DeBry's claim that the letter was excessively published. Maycock "had a legally justified reason for receiving" the letter. *See Brehany,* 812 P.2d at 58.

### III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 25 Ms. DeBry also claims Godbe's statements constituted intentional infliction of emotional distress. In *Samms v. Eccles,* we stated the elements of such a claim:

> [A]n action for severe emotional distress, though not accompanied by bodily impact or physical injury, [may lie] where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

11 Utah 2d 289, 293, 358 P.2d 344, 346–47 (1961). The trial court held that Ms. DeBry's intentional infliction of emotional distress claim could not survive summary judgment because Godbe's conduct was not outrageous and intolerable under *Samms.* The court was correct in this conclusion. However, even if the letter were outrageous and intolerable, summary judgment would still have been correctly granted. As Godbe argued in her motion for summary judgment, the judicial proceeding privilege extends not only to defamation claims but to "*all claims* arising from the same statements." *Price,* 949 P.2d at 1258 (emphasis added); *see also Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 906 n. 37 (Utah

1992). Ms. DeBry's intentional infliction of emotional distress claim arises solely from Godbe's letter. Because the judicial proceeding privilege applies to the letter, Ms. DeBry's claim for intentional infliction of emotional distress was correctly dismissed.

¶ 26 Affirmed.

¶ 27 Chief Justice HOWE, Associate Chief Justice DURHAM, and Justice RUSSON concur in Justice STEWART's opinion.

¶ 28 Having disqualified himself, Justice ZIMMERMAN does not participate herein.

