2001 UT 28

Louis J. KROUSE, Russel L. Olsen, and Clare Jackson, Plaintiffs and Appellants,

v.

Christopher J. BOWER; Mary Lynne Perry; D. Randall Trueblood; D. Randall Trueblood, P.C., a Utah professional corporation; Eric P. Lee; Eric P. Lee, P.C., a Utah professional corporation; and Dart, Adamson, Donovan & Hanson, Defendants and Appellees.

No. 990660.

Supreme Court of Utah.

March 23, 2001.

copies also being distributed to each member of the owners' association. The trial court granted defendants' motion to dismiss, concluding that the letter was privileged. We affirm.

## STANDARD OF REVIEW

¶ 2 When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See, e.g., St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 196 (Utah 1991). We recite the facts accordingly. Because the propriety of a motion to dismiss is a question of law, we review for correctness, giving no deference to the decision of the trial court. *Id.*

## FACTUAL BACKGROUND

¶ 3 The Stein Eriksen Lodge is operated by an owners' association on behalf of fifty-four condominium unit owners. It consists of residential condominiums, common facilities and areas, and approximately one acre of land on which the owners' association considered whether to develop an additional number of condominiums, "Phase III." The owners' association voted in favor of additional development to the lodge and approved plans for Phase III. Christopher Bower and Mary Lynne Perry, both condominium owners, opposed Phase III. In addition to voting against the additional development, they retained D. Randall Trueblood, Eric P. Lee, and the law firm of Dart, Adamson, Donovan & Hanson. Trueblood sent a demand letter to counsel for the owners' association, McKay Marsden, threatening suit in federal court to enjoin construction of Phase III. Although it was addressed to Marsden, the letter indicates that courtesy copies were to be given to "Chris and Marilyn Bower" and the "Stein Eriksen Lodge Homeowners." After Bower and Perry received a copy of the letter, they distributed copies of it, along with another letter they drafted themselves, to the members of the owners' association.

Mary Anne Q. Wood, David J. Crapo, and Eric T. Johnson, Salt Lake City, for plaintiffs.

David B. Watkiss, Gordon L. Roberts, and James T. Blanch, Salt Lake City, for defendants.

WILKINS, Justice:

¶ 1 We are asked to decide whether a demand letter written by counsel for defendants that threatened legal action and allegedly defamed plaintiffs is subject to the judicial proceeding privilege. We are also presented with whether the letter threatening suit lost its alleged privilege because it was excessively published, having been sent to counsel for the owners' association, with

¶ 4 Plaintiffs allege that they were defamed by Trueblood's letter. Plaintiffs are associated with the owners' association. Louis Krouse is the president of the owners' association board of trustees, Russel Olsen is an associate general manager of the association, and Clare Jackson is a realtor who facilitates the sale of the condominiums. Trueblood's letter followed a conversation Trueblood had with counsel for the owners' association "regarding certain concerns with the proposed Phase III development." In general, the letter pointed out concerns of Bower and Perry, essentially encouraged the owners to reconsider approval of Phase III, and threatened suit to enjoin construction of the project. Plaintiffs specifically allege that two paragraphs in the letter written by Trueblood—paragraphs suggesting that if Phase III were permitted to proceed as planned, plaintiffs would likely violate fiduciary duties and would have committed fraud—were defamatory.

¶ 5 After Bower and Perry filed suit in federal court requesting that construction of Phase III be enjoined, plaintiffs filed a complaint alleging defamation. Defendants filed a motion to dismiss, and the trial court granted the motion, concluding that the statements in the letter were absolutely privileged under the judicial proceeding privilege. Accordingly, the district court dismissed plaintiffs' complaint with prejudice. Plaintiffs appeal.

## ANALYSIS

¶ 6 Plaintiffs claim that the statements in the demand letter were not privileged because they were not made in the course of a legal proceeding, nor did they refer to a legal proceeding, because a lawsuit had not yet been filed when the letter was published. Plaintiffs also contend that the letter was excessively published. They argue that because the letter was distributed to the members of the association, the letter's purpose was not to seek settlement, but a veiled attempt to persuade the owners to vote against Phase III, and therefore the letter was published to more persons than was required to effectuate its purpose.

¶ 7 Defendants counter, arguing that the trial court correctly determined that the "classic pre-litigation demand letter" at issue satisfies the three prongs of the judicial proceeding privilege. Defendants also contend that the demand letter was not excessively published because the condominium owners to whom the letter was distributed had a direct interest in the threatened litigation.

¶ 8 The general rule is that judges, jurors, witnesses, litigants, and counsel involved in a judicial proceeding have an absolute privilege against suits alleging defamation. *See, e.g., Allen v. Ortez*, 802 P.2d 1307, 1311 (Utah 1990); *see also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 114, 816–17 (5th ed.1984). This court has developed a three-part test for determining whether a statement falls within this judicial proceeding privilege. "To establish the judicial proceeding privilege, the statements must be (1) 'made during or in the course of a judicial proceeding'; (2) 'have some reference to the subject matter of the proceeding'; and (3) be 'made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.'" *DeBry v. Godbe*, 1999 UT 111, ¶ 11, 992 P.2d 979 (quoting *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997)); *see also Ortez*, 802 P.2d at 1312–13 (setting forth the three-part judicial proceeding privilege test for the first time in our jurisprudence). In the instant case, the content of the demand letter and the circumstances surrounding its publication satisfy the judicial proceeding privilege test.

¶ 9 First, the demand letter was written by Trueblood and distributed in the course of a judicial proceeding. This first element, whether a statement is "made during or in the course of a judicial proceeding," is interpreted broadly. *See, e.g., DeBry*, 1999 UT 111 at ¶ 14, 992 P.2d 979; *Ortez*, 802 P.2d at 1312 n. 9. As a result, we have indicated that a statement may qualify as made during or in the course of a judicial proceeding if the communication is preliminary to a proposed judicial proceeding. *DeBry*, 1999 UT 111 at ¶ 12 14, 992 P.2d 979. Indeed, we have previously declared that "[t]he publication of defamatory matter by an attorney is protected not only when made

in the institution of proceeding or in the conduct of litigation before a judicial tribunal, but in conferences and in communications preliminary thereto.'" *Id.* at ¶ 12 (quoting *Beezley v. Hansen*, 4 Utah 2d 64, 66, 286 P.2d 1057, 1058 (1955) (quoting Restatement of the Law of Torts § 586 cmt. a (1938))); *see also, Price*, 949 P.2d at 1256 (same). In the last line of the demand letter in this case, Trueblood suggested that he and his clients wished to avoid litigation, but that a judicial proceeding was an imminent possibility. Trueblood stated that if their concerns were not resolved, they would "have no choice but to file suit to enjoin the development."

¶ 10 The judicial proceeding privilege extends to statements made prior to the filing of a lawsuit because it is intended to encourage reasonable efforts to resolve disputes prior to the filing of a complaint. "The policy behind [the] privilege is to encourage full and candid participation in judicial proceedings by shielding the participant from potential liability for defamation." *Price*, 949 P.2d at 1256. Because the purpose of the privilege is to promote the resolution of disputes, it should be interpreted to encourage this end. It therefore follows that the privilege must also encourage candid, forthright settlement communications that take place prior to the filing of suit. *Knight v. Patterson*, 20 Utah 2d 242, 244–45, 436 P.2d 801, 803 (1968) (stating that when disputes have progressed to the point where attorneys are involved, it is desirable to find some basis for agreement and settlement, and in order to serve the objective of settlement, it is essential that parties and counsel feel free to discuss frankly and candidly their respective positions and contentions). Moreover, the "privilege is premised on the assumption that the integrity of the judicial system requires that there be free and open expression by all participants and that this will only occur if they are not inhibited by the risk of subsequent defamation suits." *Ortez*, 802 P.2d at 1311, *quoted in Price*, 949 P.2d at 1256; *see also DeBry*, 1999 UT 111 at ¶ 14, 992 P.2d 979 (stating that if statements made outside the actual trial proceedings were not entitled to the privilege, the policy supporting the privilege would be undermined). On account of this need for free

and open expression in order to resolve disputes both before and after a complaint has been filed, the privilege is broad enough to include communications made prior to the formal filing of a complaint. Accordingly, even though the demand letter written by Trueblood was published prior to the formal initiation of a judicial proceeding, the filing of a complaint, it still qualifies as "made during or in the course of a judicial proceeding."

¶ 11 We turn now to the second element of the judicial proceeding privilege test, whether the letter has some reference to the subject matter of the proceeding. Both parties address *Wright v. Lawson*, 530 P.2d 823 (Utah 1975). Plaintiffs contend *Wright* is controlling. Defendants assert *Wright* is no longer good law or, alternatively, that *Wright* is distinguishable from the instant case. In *Ortez*, we explained that *Wright* turned on the fact that the allegedly defamatory letter in question "had 'no sufficient relationship to pending or anticipated litigation' to entitle any defamatory material in the letter to an absolute privilege [i.e. the judicial proceeding privilege]." *Ortez*, 802 P.2d at 1312 (quoting *Wright*, 530 P.2d at 826); *see also DeBry*, 1999 UT 111 at ¶ 18, 992 P.2d 979 (stating that "*Wright* held that an attorney's letter did not relate to pending or anticipated litigation, even though the parties were engaged in a lawsuit, because the letter discussed matters outside the scope of that lawsuit and threatened separate legal action only if current demands were not met"). In fact, Justice Crockett in his separate opinion in *Wright* stated, "I agree with the rule announced in the main opinion that the matter should have some relevancy to, or reasonable relationship with, the legal business or negotiations with respect to which privilege is claimed." *Wright*, 530 P.2d at 826 (Crockett, J., concurring in part, dissenting in part). The rule enunciated in *Wright* is thus congruent with the second element of the test set forth in *Ortez*, that the allegedly defamatory statements "have some reference to the subject matter of the proceeding." In *Ortez*, this court enunciated the three-part rule in use today because "[n]either in *Wright* nor in *Beezley* did we have occasion to elaborate on

the elements of the cause of action." *Ortez,* 802 P.2d at 1312.

¶ 12 We conclude that the demand letter written by Trueblood satisfies the second element of the test. It has "some reference to the subject matter of the proceeding." As we have said previously, in order to satisfy the second part of the judicial proceeding privilege, "[a] statement need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply." *DeBry,* 1999 UT 111 at ¶ 16, 992 P.2d 979; *see also* Keeton et al., *supra* at 817–18. Statements are relevant for purposes of the privilege if they simply have " 'some relationship to the cause or subject matter involved.' " *DeBry,* 1999 UT 111 at ¶ 16, 992 P.2d 979 (quoting *Wright,* 530 P.2d at 825); *see also Ortez,* 802 P.2d at 1312 n. 8. Plus, because of the important purpose of the privilege, doubts are resolved in favor of the statement having reference to the subject matter of the proceeding. *DeBry,* 1999 UT 111 at ¶ 16, 992 P.2d 979; *see also* Keeton et al., *supra* at 818.

¶ 13 In this case, the allegedly defamatory statements and the subject matter of the proposed proceeding are intertwined. The allegedly defamatory letter expressed concerns Bower and Perry had about Phase III, encouraged the owners to reconsider approval of Phase III, and threatened to file suit to enjoin construction. These concerns represent reasons why Bower and Perry believed construction should be enjoined. Inasmuch as the language threatening suit follows the discussion of these concerns and alleged improprieties, the statements are clearly related to the subject matter of the threatened proceeding.

¶ 14 There is no question that the third part of the test is satisfied. The statements in the letter were made by someone acting in the capacity of judge, juror, witness, litigant, or counsel. Trueblood wrote the letter acting in the capacity of counsel.

¶ 15 This case turns on whether, in light of the overall circumstances, the letter was "excessively published." We have previously indicated that the judicial proceeding privilege may be lost due to excessive publication. *See, e.g., DeBry,* 1999 UT 111 at ¶¶ 21–24, 992 P.2d 979. Statements that are otherwise privileged lose their privilege if they are excessively published, that is, "published to more persons than the scope of the privilege requires to effectuate its purpose." *Id.* at ¶ 21 (citing *Brehany v. Nordstrom,* 812 P.2d 49, 58 (Utah 1991) (stating that a privilege may be abused through publication to persons "beyond those who ha[ve] a legally justified reason for receiving it")). The purpose of the judicial proceeding privilege is to promote candid and honest communication between the parties and their counsel in order to resolve disputes, *Knight,* 20 Utah 2d at 244–45, 436 P.2d at 803, and the privilege is premised on the assumption that the judicial system requires free and open expression, and that this will only occur if participants are not inhibited by the risk of subsequent defamation suits, *Ortez,* 802 P.2d at 1311. The excessive publication rule, in the context of judicial proceeding privilege cases, is to prevent abuse of the privilege by publication of defamatory statements to persons who have no connection to the judicial proceeding. *DeBry,* 1999 UT 111 at ¶ 21, 992 P.2d 979. Therefore, in the context of this case, the demand letter would be excessively published if it was published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation, in other words, if the letter was published to those who did not have a legitimate role in resolving the dispute, or if it was published to persons who did not have an adequate legal interest in the outcome of the proposed litigation.

¶ 16 With respect to counsel, specifically Trueblood, the fact that the demand letter indicated that courtesy copies were to be delivered directly to the homeowners themselves, in addition to their attorney, is problematic. Because the letter contemplated delivery directly to each member of the homeowners' association, parties who Trueblood knew were represented by counsel, we are not convinced that delivery to the homeowners was necessary to effectuate the pur-

pose of pursuing settlement.[1] The alleged purpose of this "classic demand letter," that of pursuing settlement, could have been accomplished through publication to counsel only.

¶ 17 On the other hand, the members of the homeowners association had a clear legal interest in the subject matter of the letter and the threatened lawsuit. They were clients of Marsden, the attorney to whom the letter was addressed, and the owner's association was a potential, and, in fact later named, party to the threatened federal lawsuit seeking an injunction. The homeowners therefore would have likely received a copy of, or at least known of the existence and substance of, the demand letter.

¶ 18 We also consider these circumstances in light of the purpose of the judicial proceeding privilege. The overarching public policy of encouraging open, forthright discussion, particularly with respect to settlement discussions prior to the filing of a complaint, weighs in favor of defendants. The law should promote candid and honest communication between the parties and their counsel in order to resolve disputes, and in order for our adversarial system to function, we must encourage free and open expression whereby participants to the process are not inhibited by the risk of subsequent defamation suits. As a result, we conclude that the letter was not excessively published. With respect to the defendants who distributed the letter, Bower and Perry, both counsel and the parties to a threatened judicial proceeding benefit from the privilege. *See, e.g., Ortez,* 802 P.2d at 1311. As a result, Bower and Perry also benefit from the privilege.

## CONCLUSION

¶ 19 The letter written by Trueblood falls within the judicial proceeding privilege: the allegedly defamatory statements in the letter were made during or in the course of a judicial proceeding, have sufficient reference

to the subject matter of the proceeding, and were made by Trueblood acting in the capacity of counsel. Moreover, the letter was not excessively published. Consequently, the judgment of the trial court is affirmed.

¶ 20 HOWE, C.J., RUSSON, Associate C.J., DURHAM, and DURRANT, JJ., concur in WILKINS', J. opinion.

1. We note here that although an attorney is normally absolutely immune from civil liability for defamatory statements made in the course of a judicial proceeding, the privilege does not prevent professional discipline against the attorney for such conduct in deserving circumstances. *See, e.g., Kirschstein v. Haynes,* 788 P.2d 941, 950–51 (Okla.1990); *see generally,* Casey L. Jernigan, *The Absolute Privilege is Not a License to Defame,* 23 J. Legal Prof. 359 (1999) (concluding that the judicial proceeding privilege does not insulate an attorney from professional discipline for unethical conduct).