2002 UT 10

**Jesse L. RIDDLE, Plaintiff and Appellant,**

v.

**Lester A. PERRY, Defendant and Appellee.**

**No. 20000749.**

Supreme Court of Utah.

Jan. 25, 2002.

Clark Waddoups, Timothy B. Smith, Salt Lake City, for plaintiff.

Philip R. Fishler, Jennifer Polley–Abramson, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 Jesse Riddle appeals the district court's dismissal of his defamation claim against Lester Perry. Because the alleged defamatory statement was privileged, we affirm.

## BACKGROUND

¶ 2 When determining whether a trial court properly granted a motion to dismiss, we accept the factual allegations in the complaint as true and consider them, and all reasonable inferences to be drawn from them, in the light most favorable to the non-

moving party. *See, e.g., Krouse v. Bower,* 2001 UT 28, ¶ 2, 20 P.3d 895. We therefore assume the statement made by Mr. Perry, as discussed below, was defamatory and recite the facts accordingly.

¶ 3 Mr. Perry is an attorney who represents plaintiffs in class action suits against attorneys who practice in the field of debt collection. Mr. Riddle is an attorney who practices debt collection. Mr. Riddle filed a complaint in the third district court against Mr. Perry alleging that Mr. Perry defamed him.

¶ 4 The defamatory statement at issue in this case was made during a hearing of the Business, Labor, and Economic Development Committee of the Utah House of Representatives at which a bill to amend Utah's "civil check law" was discussed. The bill appeared to be based, in part, on a draft bill prepared by Mr. Riddle. Mr. Perry attended the committee hearing; Mr. Riddle did not. After discussion on the bill, the hearing was opened to public comment. Mr. Perry voluntarily testified and made a statement to the committee that implied that Mr. Riddle had bribed the legislator who sponsored the bill. After making this statement, the committee parliamentarian and Mr. Perry both acknowledged that it was "out of order."

¶ 5 Mr. Riddle's complaint alleged that Mr. Perry's statement before the committee was defamatory in that it would lead a reasonable person to believe that Mr. Riddle had bribed a public official with respect to the bill. Mr. Perry responded to the complaint by filing a motion to dismiss on the basis that the statement was made by a witness in the course of a legislative proceeding and was, therefore, absolutely privileged. The district court granted Mr. Perry's motion, ruling that the statement was covered by privilege. Mr. Riddle appeals.

## ISSUES PRESENTED AND STANDARD OF REVIEW

¶ 6 Mr. Perry raises two issues on appeal: (1) whether the trial court erred in holding that a statement made by a voluntary witness before a legislative committee is privileged, and (2) whether the trial court erred in finding that Mr. Perry's statement was related to the subject matter of the legislative hearing. The trial court's grant of Mr. Perry's motion to dismiss presents a question of law. *See, e.g., Krouse v. Bower,* 2001 UT 28, ¶ 2, 20 P.3d 895. Additionally, "the existence of a privilege is a question of law for the court." *Russell v. Thomson Newspapers, Inc.,* 842 P.2d 896, 900 (Utah 1992). We therefore review the trial court's decision for correctness, giving no deference to its legal conclusions. *Krouse,* 2001 UT 28 at ¶ 2, 20 P.3d 895; *Russell,* 842 P.2d at 900.

## ANALYSIS

### I. LEGISLATIVE PROCEEDING PRIVILEGE

¶ 7 The question of the privilege to be afforded a witness in a legislative proceeding is an issue of first impression in Utah. Mr. Riddle argues that legislative witnesses should be given a qualified privilege to publish defamatory statements, which can be forfeited if a witness abuses the privilege. Mr. Perry argues that legislative witnesses should be given an absolute privilege to publish defamatory statements, under which such statements may be published as long as they are related to the subject matter of the legislative proceeding. Because of Utah's long-standing policy of encouraging participation in the legislative process, and because such participation is an inherent necessity in the process, we hold that legislative witnesses must be given an absolute privilege as discussed in more detail below.

¶ 8 Article VI, section 8 of the Utah Constitution provides that "for words used in any speech or debate in either house, [members of the legislature] shall not be questioned in any other place." This provision parallels part of Article I, Section 6 of the United States Constitution which provides, "... for any Speech or Debate in either House, [senators and representatives] shall not be questioned in any other Place." These constitutional provisions have been interpreted to grant a privilege from suit to legislators, allowing legislators to speak without fear of civil or criminal repercussions, and encouraging full, open, and candid com-

munication and discussion, an inherent necessity in the legislative process. *See, e.g., Tenney v. Brandhove,* 341 U.S. 367, 372–375 & n. 5, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). As the United States Supreme Court has noted:

> "[i]n order to enable and encourage a representative of the public to discharge his [or her] public trust with firmness and success, it is indispensably necessary, that he [or she] should enjoy the fullest liberty of speech, and that he [or she] should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offence."

*Id.,* 341 U.S. at 373, 71 S.Ct. 783 (quoting James Wilson, II Works of James Wilson 38 (Andrews ed. 1896))(see this case generally for a history of legislator privilege). Furthermore, " 'these privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal.' " *Id.* at 373–74, 71 S.Ct. 783 (quoting *Coffin v. Coffin,* 4 Mass. 1, 27 (1808)). By conferring on Utah legislators the absolute privilege to speak and participate in legislative proceedings without defamation liability, the Utah Constitution—and, by extension, the voice of the people of Utah—emphasizes the importance of full and candid speech by legislators, even at the possible expense of an individual's right to be free from defamation. Thus, in this instance, the public policy of encouraging legislator participation in the legislative process trumps the right of individuals to be free from defamation.

¶ 9 The policy considerations which necessitate this constitutional privilege for legislators parallel the policy considerations which favor a similar common law privilege for legislative witnesses. Citizen participation in legislative proceedings is absolutely vital to ensure a fully-informed and representative legislature. When acting in the narrow role of being a participant in a legislative committee hearing, a citizen should be able to freely address the committee. We endorse the rationale that

> "[i]n order for a democratic government to govern democratically, it is necessary that an atmosphere be created whereby facts may be freely presented to the governing legislative body. Without such a free-speaking environment, individuals might be discouraged from addressing their government." An individual must feel unrestrained by potential defamation liability when addressing the legislature. Only then can the lawmaking process be fully informed and operate with maximum effectiveness.

*Webster v. Sun Co., Inc.,* 731 F.2d 1, 4–5 (D.C.Cir.1984) (quoting *Sherrard v. Hull,* 53 Md.App. 553, 456 A.2d 59, 62 (1983), *aff'd,* 296 Md. 189, 460 A.2d 601 (1983)).

¶ 10 As we have previously stated, "[a]bsolute privileges are granted to persons whose special position or status requires that they be as free as possible from fear that their actions in their position might subject them to legal action." *Allen v. Ortez,* 802 P.2d 1307, 1311 (Utah 1990). Because of the need to encourage citizen participation and to allow unrestrained testimony before the legislature, citizens acting as legislative witnesses occupy one such "special position." Acting in this narrow role, we hold that citizens have a privilege to speak freely, even if their speech could potentially include defamatory material. We recognize there is a potential danger for abuse, but conclude that the greater good is served by ensuring that citizens who want to participate in the legislative process may do so without fear of liability for defamation.

¶ 11 In determining the contours of the legislative proceeding privilege, we adopt the privilege as set forth in section 590A of the Restatement (Second) of Torts: "A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he [or she] is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." This privilege is constrained by the requirement that "the matter [have] some relation to the proceeding." As the *Webster* court stated, "[l]egislative immunity is meant to encourage legitimate legislative input; it is not meant to insulate all

statements, no matter how irrelevant to legislative business, that are channeled to the legislature." 731 F.2d at 5. Assuming the matter does relate to the proceeding, however, a witness is privileged to publish defamatory matter without liability.

██ ¶ 12 Mr. Riddle would have us restrict the type of testimony covered by the privilege to testimony offered under oath, in direct response to a question asked by a legislator, or in response to a subpoena. The rule we have adopted from the Restatement does not place such restrictions on the privilege. We note that in the Utah Legislature witnesses generally participate on a voluntary basis and the Legislature rarely, if ever, subpoenas witnesses or places them under oath. The legislative proceeding privilege protects all such voluntary witnesses.

██ ¶ 13 While not providing the basis for our holding today, the public policies furthered by the legislative proceeding privilege are fully consistent with those furthered by the judicial proceeding privilege, which is well established in Utah law. *See, e.g., Krouse v. Bower*, 2001 UT 28, 20 P.3d 895. To be privileged under the judicial proceeding privilege, a statement must be "(1) 'made during or in the course of a judicial proceeding'; (2) 'have some reference to the subject matter of the proceeding'; and (3) be 'made by someone acting in the capacity of judge, juror, witness, litigant, or counsel.'" *DeBry v. Godbe*, 1999 UT 111, ¶ 11, 992 P.2d 979 (quoting *Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997)). As we explained in *DeBry*, "the [judicial proceeding] privilege facilitates ... 'free and open expression by all participants ... [which] will occur only if they are not inhibited by the risk of subsequent defamation suits.'" 1999 UT 111 at ¶ 10, 992 P.2d 979 (quoting *Allen v. Ortez*, 802 P.2d 1307, 1311 (Utah 1990)). "The policy behind such privilege is to encourage full and candid participation in judicial proceedings by shielding the participant from potential liability for defamation." *Price*, 949 P.2d at 1256. Likewise, the legislative proceeding privilege facilitates free and open expression and encourages full and candid participation in the legislative process by legislative witnesses.

¶ 14 We note that other courts have adopted identical or similar legislative proceeding privileges, albeit using varying legal reasoning to reach the same result. *See, e.g., Webster v. Sun Co., Inc.*, 731 F.2d 1, 4–6 (D.C.Cir.1984) (adopting legislative proceeding privilege for unsolicited statements given to legislative body if statement (1) would not have been given but for intent to inform legislature and (2) has relation to legitimate legislative business); *Bio/Basics Int'l Corp. v. Ortho Pharm. Corp.*, 545 F.Supp. 1106, 1115–16 (S.D.N.Y.1982) (holding that New York law would give privilege to witnesses appearing before legislative committees if (1) statement is related to subject matter and (2) committee had power to subpoena witness, regardless of whether power was used); *DeSantis v. Welfare Ass'n*, 237 N.J.Super. 550, 568 A.2d 565, 567 (1990) (adopting Restatement (Second) of Torts § 590A (1976) and adding that privilege attaches only if matter would not have been published except to inform legislature); *Jennings v. Cronin*, 256 Pa.Super. 398, 389 A.2d 1183, 1185 (1978)(adopting Restatement (Second) of Torts § 590A (1976) and discussing Pennsylvania's judicial proceeding privilege).

¶ 15 In this case, Mr. Perry's defamatory statement was made during a legislative committee hearing. The hearing had been opened to receive public comment, and Mr. Perry was permitted to testify. Thus, because Mr. Perry testified as a witness in a legislative proceeding, his statement was privileged, even if defamatory, as long as his statement had some relation to the committee hearing. We therefore review whether Mr. Perry's statement had the requisite relation to the legislative committee hearing at which the statement was made.

## II. RELATION OF MR. PERRY'S STATEMENT TO COMMITTEE HEARING

██ ¶ 16 As discussed above, defamatory testimony is privileged only if it has some relation to the legislative proceeding at which the statement is made. Mr. Riddle argues that "the substance of the hearing was to discuss the propriety of amending Utah's

civil check law, not to discuss whether private individuals had bribed members of the Utah House of Representatives," and that, therefore, Mr. Perry's statement had no relation to the hearing and was, consequently, not privileged. To bolster his argument, he points to the fact that both the committee parliamentarian and Mr. Perry acknowledged that Mr. Perry's statement was "out of order." Despite Mr. Riddle's efforts to characterize Mr. Perry's statement as unrelated to the hearing, however, we hold that it was, as a matter of law, sufficiently related.

¶ 17 The policy behind the legislative proceeding privilege dictates that the relationship requirement—that is, the requirement that to be covered by the privilege the statement must have some relation to the proceeding—must be broadly interpreted. The purpose of the privilege is to encourage the full and candid testimony of citizens before the legislature. Construing the relationship requirement narrowly could inhibit full and candid testimony, defeating this purpose and swallowing the privilege. Broadly construing the relationship requirement, however, promotes the purpose of encouraging citizen testimony. In the context of the judicial proceeding privilege, we have previously stated that "[d]oubts should be resolved in favor of the statement having reference to the subject matter of the proceeding because of the important purpose the privilege serves." *DeBry v. Godbe*, 1999 UT 111, ¶ 16, 992 P.2d 979 (citation ommitted). Because of the important purpose served by the legislative proceeding privilege, doubts should be resolved in favor of the statement having some relation to the proceeding.

¶ 18 In the case before us today, the defamatory statement was made at a legislative committee hearing, the purpose of which was to discuss a bill. Mr. Perry, acting as a legitimate witness before the committee, alleged that the sponsor of the bill had been bribed by Mr. Riddle, the author of the bill. While it is true, as Mr. Riddle points out, that the purpose of the hearing was not to discuss bribery, the fact that the bill itself

was the topic of discussion makes Mr. Perry's allegation relevant to the hearing. Certainly the issue of whether a bill was the result of improper dealing is relevant in a hearing held to assist committee members in making a decision on whether or not to recommend that bill. Mr. Riddle's assertion, that the acknowledgment by the parliamentarian and Mr. Perry that Mr. Perry's statement was "out of order" proves that the statement was not related to the hearing, is irrelevant here. Even if it is true that allegations of bribery are "out of order" in legislative committee hearings, this fact does not mean that such an allegation has no relation, broadly construed, to the hearing. We hold, therefore, as a matter of law, that Mr. Perry's statement had some relation to the committee hearing. Mr. Perry's statement is, therefore, privileged and not actionable.[1]

## CONCLUSION

¶ 19 As discussed in detail above, witnesses who testify as part of a legislative proceeding are privileged to publish defamatory matter, if the matter has some relation to the proceeding. Mr. Perry was a witness who testified before a legislative proceeding, and his testimony had some relation to that proceeding. His testimony was, therefore, privileged. Because Mr. Perry's statement was privileged, the district court's grant of Mr. Perry's motion to dismiss is affirmed.

¶ 20 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Judge ORME concur in Justice WILKINS' opinion.

¶ 21 Having disqualified himself, Justice DURRANT does not participate herein; Court of Appeals Judge GREGORY K. ORME sat.

---

1. It appears that even if we found that legislative witnesses are covered by only a qualified privilege, as advocated by Mr. Riddle, that Mr. Perry's statement would still be privileged and, therefore, not actionable.