2008 UT 76

**Michael Anthony ARCHULETA, Petitioner and Appellee,**

v.

**Hank GALETKA, Warden of the Utah State Prison, Respondent and Appellant.**

**No. 20070228.**

Supreme Court of Utah.

Nov. 7, 2008.

Mark L. Shurtleff, Att'y Gen., Thomas B. Brunker, Erin Riley, Christopher D. Ballard, Asst. Att'ys Gen., Salt Lake City, for appellant.

Richard P. Mauro, Mark R. Moffat, Ann Taliaferro, Salt Lake City, for Lynn C. Donaldson.

Edward K. Brass, Salt Lake City, pro se.

WILKINS, Justice:

¶ 1 We have been asked to determine whether the district court erred in denying Respondent's motion for sanctions under Utah Rule of Civil Procedure 11. We affirm.

## BACKGROUND

¶ 2 This case comes in the wake of Michael Anthony Archuleta's capital murder conviction, the underlying facts of which make no difference here and have previously been described in detail. *See State v. Archuleta,* 850 P.2d 1232, 1236–37 (Utah 1993), *cert. denied,* 510 U.S. 979, 114 S.Ct. 476, 126 L.Ed.2d 427 (1993). This court subsequently affirmed Archuleta's conviction and sentence. *Id.* at 1235. Counsel for Archuleta then filed a Petition for a Writ of Habeas Corpus and/or Postconviction Relief on August 11, 1994. Since that time, this case has followed a meandering path of challenges, delays, and changes in counsel that have, to date, consumed more than 14 years.

¶ 3 In June 2002, Archuleta filed his Second Amended Petition for a Writ of Habeas Corpus and/or Postconviction Relief with the assistance of counsel Edward K. Brass and Lynn Donaldson. The second amended petition was about fifty pages in length, excluding attachments, and raised approximately 120 claims, many of which were repetitions of claims raised in the first amended petition eight years earlier.

¶ 4 The second amended petition spurred the State to file a motion for rule 11 sanctions against the attorneys who had prepared and filed it. The State alleged that the second amended petition violated rule 11 by: (1) raising claims that were foreclosed or unsupported by existing law; (2) raising claims that were not supported by the evidence; (3) citing an arguably inapplicable

subsection of the Utah Rules of Civil Procedure with the presumed intention of misleading the trial court as to the subsection's applicability; and (4) misstating the law regarding the constitutionality of Utah's death penalty statutes.

¶ 5 The trial court held a hearing on the motion in which it received evidence and heard oral arguments. Ultimately, the trial court concluded that the attorneys' conduct in this case, although somewhat "unwarranted and unjustifiable," did not rise to a level sufficient to justify rule 11 sanctions. The State now appeals that ruling.

## ANALYSIS

### I. STANDARD OF REVIEW

■ ¶ 6 In reviewing a trial court's determination of whether a rule 11 violation has occurred, we apply different standards of review to different aspects of that determination. Findings of fact are reviewed under a clear error standard, while conclusions of law are reviewed for correctness. *See Griffith v. Griffith,* 1999 UT 78, ¶ 10, 985 P.2d 255. The trial court's determination regarding the type and amount of sanctions to be imposed is reviewed for abuse of discretion. *Id.* We apply this three-part approach because it "accords appropriate discretion to the trial judge in making the difficult judgment as to what an appropriate sanction may be, [and] upholds findings of fact unless contrary to the clear weight of the evidence...." *Barnard v. Sutliff,* 846 P.2d 1229, 1235 (Utah 1992).

■ ¶ 7 Decisions regarding rule 11 sanctions are best left in the hands of the trial court. We therefore accord reasonable discretion to the trial court to determine when sanctions are useful and appropriate. When applying the appropriate standards of review, we grant considerable deference to the trial court's factual findings and some deference to the trial court's application of the facts when reaching its legal conclusion of whether rule 11 has been violated. We

also afford substantial deference to the trial court's ultimate determination of when, and to what extent, sanctions are a useful tool in controlling abuses of the judicial process.

■ ¶ 8 In this case, the trial court held a lengthy hearing on the State's motion for rule 11 sanctions, at which both parties had an opportunity to present evidence and argue their respective positions. After thorough consideration, the trial court issued a seventeen-page, well-reasoned ruling in which it held that "none of the actions by counsel for Petitioner raised in Respondent's motion for sanctions were so egregious as to constitute a violation of rule 11." We find no error in the trial court's findings of fact or conclusions of law. On that basis, we also see no need to revise the trial court's ultimate determination regarding the usefulness of sanctions in this situation, and therefore affirm the trial court's conclusions.

### II. APPLICATION OF RULE 11 IN CAPITAL CASES

¶ 9 Counsel for the lawyers against whom the sanctions were sought in this matter argues that death penalty cases are different enough to require a modified application of rule 11. Citing the somewhat conflicting requirements of the guidelines suggested by the American Bar Association for counsel in capital cases, as well as the differing process of reviewing death penalty cases followed in the federal courts, counsel urged us to relax the clear requirements of our rules that impose on counsel obligations of honesty, integrity, thoroughness, and candor with the court. While we agree that death penalty cases are different from all other criminal and civil cases, relaxing the minimum standards of professional competence and integrity required of counsel is an unacceptable method of compensating for those differences.

■ ¶ 10 Rule 11 applies in its entirety to capital cases.[1] This is true regardless of

---

1. Although capital cases, including postconviction proceedings, are clearly criminal in nature, Utah Rule of Civil Procedure 81(e) provides that the rules of civil procedure "shall also govern in

any aspect of criminal proceedings where there is no other applicable statute or rule, provided, that any rule so applied does not conflict with any statutory or constitutional requirement."

whether the case was undertaken on a paid or pro bono basis. It is likewise applicable regardless of considerations of time, limited resources, and complexity of the issues. In other words, a capital case does not create any special exception for bad behavior or bad lawyering, nor any justification for the relaxation of rule 11.

¶ 11 Nevertheless, we are concerned by the possibilities of increased delay, expense, and complexity which may be occasioned by the raising of a motion for rule 11 sanctions during the pendency of an underlying capital case. The moment allegations of a personal violation are filed against capital defense counsel, the interests of attorney and client diverge. The attorney is required to invest time and resources in his or her own defense in the rule 11 matter. An attorney's rule 11 defense may also require disclosure of strategy or communications that constitute a possible breach of the confidentiality between attorney and client. In noncapital matters, where defense counsel may easily be replaced or assisted by other competent counsel, the challenge to the behavior of defense counsel has a less dramatic impact.

■ ¶ 12 Consequently, motions for rule 11 sanctions brought against opposing counsel in capital cases require different treatment by trial courts. Hereafter, rule 11 motions should be deferred by the trial court until the conclusion of the underlying proceedings. Opposing counsel should give notice of the basis prompting the filing of a rule 11 motion as now provided, triggering the twenty-one day safe harbor period in which to cure the alleged violation, *see* Utah R. Civ. P. 11(c)(1)(A) (2008), but further proceedings on the motion must be stayed until the conclusion of the pending action in order to minimize the delay and interference resulting from the defense of the motion. Failure to do so prior to the release of this opinion is not grounds for additional review of prior matters. This direction to trial courts is prospective only.

## III. RE–RAISING RESOLVED CLAIMS IN CAPITAL CASES

¶ 13 At the heart of the State's concern is the widespread practice of repeatedly raising previously decided issues in subsequent challenges to a capital conviction. Counsel for the defense lawyers argued, however, that failure to re-raise claims is unacceptable practice for capital defense counsel, given the ABA guidelines and the nature of state and federal capital case review.

¶ 14 Here, Archuleta's second amended petition for postconviction relief contained approximately 120 claims of error in prior proceedings, some of which had been expressly rejected by this court on direct appeal. The State argues that re-raising these claims violated rule 11, while the defense lawyers argue that it was necessary to re-raise these claims for preservation purposes.

¶ 15 We acknowledge the difficult situation in which counsel on both sides of this question find themselves. We also recognize that capital case review has become increasingly complex due to the interaction of state and federal statutory efforts to simplify and streamline the process, not to mention the impact of decisions of the United States Supreme Court and of our own courts. interpreting the constitutional minimums applicable to review in cases for which the life of the defendant hangs in the balance. Death penalty cases truly are different from other criminal cases handled by our courts. They demand greater skill and more resources than any other criminal matter. As a consequence, we cannot say with any real degree of certainty that defense counsel's claim that re-raising decided issues is pointless. We can say with complete certainty, however, that doing so in a nondiscriminatory manner, without the requisite competence, candor, and thoroughness, will lead to sanctions in the future.

■ ¶ 16 If counsel feel compelled to re-raise resolved or arguably resolved claims solely for purposes of preservation, they may do so, so long as those claims are properly

Utah R. Civ. P. 81(e). As there is no statute or rule indicating to the contrary, there is no exception to rule 11's applicability in capital cases.

The standard application of rule 11 therefore applies.

identified as such. Resolved claims must be grouped and labeled in such a manner that they are evident as such to the trial court and to opposing counsel, with the clear indication that they are raised solely for the purpose of preservation. Further, previously raised claims must still allege an existing change in the law, a nonfrivolous argument for a change in the existing law, or some other equally reasonable justification. *See* Utah R. Civ. P. 11(b)(1)-(4). Counsel's belief that there is an obligation to repeatedly re-raise resolved claims does not diminish the obligation to do so competently.

### IV. ADEQUACY OF COUNSEL IN CAPITAL CASES

¶ 17 While we accept the trial court's conclusion that the attorney conduct at issue in this case did not rise to the level demanding a rule 11 sanction, we also agree with the trial court that much of what took place in regard to Archuleta's second amended petition was unwarranted and unjustifiable under our rules and applicable law. The circumstances giving rise to this pattern of behavior in capital cases include low levels of public funding for capital cases, increasing delays in final resolution of these cases, significantly diminishing numbers of qualified counsel able and willing to represent capital defendants, and changing legal and public attitudes to death penalty matters.

¶ 18 In recent years we have become especially concerned with the diminishing pool of competent counsel in capital cases. There is no acceptable justification for this trend. Competent defense and appellate counsel are guaranteed by our constitution. We cannot allow a defendant's life to be taken by the government without an adequate review of the conviction. Our judicial oath to support, protect, and defend the Constitution must, of necessity, include the requirement that we take measures within our authority and responsibility to see that the mandates of the Constitution are observed.

¶ 19 It is the duty of the legislative branch to provide for adequate defense of capital defendants, including sufficient resources to attract, train, compensate, and support legal counsel. It is left to the legislative branch to determine how best to accomplish this goal. However, it falls to us, as the court of last resort in this state, to assure that no person is deprived of life, liberty, or property, without the due—and competent—process of law. Without a sufficient defense, a sentence of death cannot be constitutionally imposed. This basic concept is bedrock upon which our constitutional government stands.

¶ 20 If, in the future, we find that the unavailability of competent and willing counsel impedes prompt, constitutionally sound resolution in capital cases, we may be forced to hold that the lack of such counsel is sufficient grounds for outright reversal of a capital sentence and remand for the imposition of a sentence of life in prison without the possibility of parole, for which the required degree of sophistication and skill reposed in counsel is slightly less.

¶ 21 Affirmed.

¶ 22 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge MAUGHAN concur in Justice WILKINS' opinion.

¶ 23 Having disqualified himself, Justice NEHRING does not participate herein; District Judge PAUL G. MAUGHAN sat.