2013 UT App 236

# THE UTAH COURT OF APPEALS

WESTMONT MAINTENANCE CORPORATION AND WESTMONT
MIRADOR, LLC,
Plaintiffs and Appellants,
*v.*
DWAYNE A. VANCE,
Defendant and Appellee.

Opinion
No. 20120369-CA
Filed October 3, 2013

Second District, Ogden Department
The Honorable Ernest W. Jones
No. 110904573

Charles A. Schultz, Attorney for Appellants
Dwayne A. Vance, Appellee Pro Se

JUDGE WILLIAM A. THORNE JR.[1] authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.

THORNE, Judge:

¶1 Westmont Maintenance Corporation and Westmont
Mirador, LLC (collectively Westmont[2]) appeal from the district

---

1. Judge William A. Thorne Jr. participated in and voted on this
case as a regular member of the Utah Court of Appeals. He retired
from the court before this decision issued.

2. The parties have taken great care in their briefs to retain the
distinction between Westmont Maintenance Corporation and
Westmont Mirador, LLC. However, for purposes of this opinion,

(continued...)

court's order dismissing their defamation complaint against attorney Dwayne A. Vance and imposing sanctions against Westmont in the amount of $2,600 to be paid to Vance to compensate him for the time he spent defending the case on his own behalf. We affirm.

BACKGROUND

¶2　In 2010, Matthew and Whitney Shurtliff retained Vance to represent them in a dispute they were having with their residential landlord, Westmont. The Shurtliffs had entered into a lease agreement with Westmont that was to expire on August 31, 2010. However, Westmont alleged that they had signed a second lease agreement extending the lease term through November 30, 2010. Westmont had a copy of the second lease that purported to bear the Shurtliffs' signatures, but the Shurtliffs denied ever having signed a second lease agreement.

¶3　On August 16, 2010, Vance sent a letter to Westmont in which he expressed his position that Westmont had forged the Shurtliffs' signatures on the second lease in order to defraud them and extort additional money from them. Vance copied the letter to Westmont's three individual principals and to the Shurtliffs. Vance sent Westmont a second letter on August 30—also copied to the principals and the Shurtliffs—in which he referred to Westmont's "forgery" of the second lease. On September 1, after becoming aware that Westmont was represented by attorney Charles Schultz, Vance sent Schultz a letter containing two more references to the second lease agreement as "forged" and expressing Vance's belief that the parties would not be able to resolve their differences without litigation. Vance copied this final letter to the Shurtliffs but not to Westmont's principals.

_____

2. (...continued)
we treat them as a single entity because the distinction is not relevant to our analysis.

¶4     On January 24, 2011, the Shurtliffs filed a small claims action against Westmont seeking the return of their security deposit. On March 15, Westmont filed an action in the district court against the Shurtliffs over the lease dispute. The Shurtliffs agreed to litigate the matter in district court and voluntarily dismissed their small claims action. While the case between Westmont and the Shurtliffs was pending, Westmont initiated the present case against Vance by filing a separate complaint in the district court on July 1, 2011. Westmont's complaint alleged that Vance's letters accusing it of committing forgery and defrauding and extorting the Shurtliffs were defamatory.

¶5     Vance represented himself against Westmont's defamation suit. He promptly moved to dismiss the complaint, asserting various legal defenses to the claim of defamation. The district court granted Vance's motion at an October 19, 2011 hearing, agreeing with Vance that his letters were protected by the judicial proceeding privilege, that there had been no publication of his statements to any third parties, and that the subject communications did not constitute defamation.

¶6     The district court also awarded Vance his own attorney fees at the hearing despite Vance's self-representation and his not having asked for such fees in his motion to dismiss. The district court provided the following explanation for this decision:

> [W]hen I first started to read the briefs, my original response or reaction was you got to be kidding me. We're now suing an attorney because he comes in and tries to defend people on a landlord/tenant lawsuit? . . . [I]t almost appears to me as if your client has said, Hey, these people want to go to trial, we're going—we're going to up the ante. We're going to turn the screws. We're going to sue the lawyer. And I'm thinking, for what? I mean, all he's trying to do is represent his clients. And I just—I'm just—I'm just amazed that this has gone to this point that we're

suing the attorney who represents these folks on $150 small claims landlord/tenant case. I just think we've gotten way over the top on this case.

. . . I just think this case is just—to me it's unbelievable that we would sue Mr. Vance who's simply trying to defend some tenants on a landlord/tenant dispute. So having said that, I'm going to grant attorney's fees.

Westmont did not raise any objection to the attorney fee award at the hearing.

¶7    Vance prepared a proposed order of dismissal and an attorney fee affidavit. Westmont filed objections to both.[3] The objection to the proposed dismissal order challenged paragraphs 5 and 6 pertaining to the attorney fee award,[4] arguing that the district court had not made the statements contained in those paragraphs at the dismissal hearing. Westmont's objection stated,

> The Court did not make any reference to [Utah Code section] 78A-2-201 when making its ruling on [Vance's] motion to dismiss. The Court did not state under what authority it was awarding [Vance] attorney's fees. Additionally, [Utah Code section] 78A-2-201 does not provide any provision authorizing a court to award attorney's fees. Attorney's fees may only be awarded if there is a

---

3. The objection to Vance's attorney fee affidavit challenged only the amount of Vance's claimed fees and raised no objection to the basis for the fee award.

4. Paragraph 5 of the proposed order characterized Westmont's suit as an "egregious and unwarranted use of legal process, a waste of judicial resources, and an undue imposition upon . . . Vance," and paragraph 6 contained the resulting award of attorney fees.

contract provision awarding them or if there is a statute awarding them.

Vance responded that the language of paragraph 5 was substantially similar to the district court's actual oral ruling and that paragraph 6's reference to Utah Code section 78A-2-201 was justified because the attorney fee award was clearly a sanction against Westmont under the district court's inherent or statutory powers. *See generally* Utah Code Ann. § 78A-2-201 (LexisNexis 2012) (enumerating certain powers possessed by every court).

¶8     The district court signed Vance's proposed dismissal order as submitted. The dismissal order invoked the district court's inherent power to sanction parties to control the proceedings before it, as well as its statutory powers under Utah Code section 78A-2-201, and ordered Westmont "to compensate attorney Dwayne A. Vance for the time he has spent representing himself herein, at his customary hourly billing rate." The district court wrote in $2,600 as the amount awarded to Vance, a reduction from the claimed $4,212 in fees that Vance had submitted to the court.

¶9     Westmont filed a motion to alter or amend the dismissal order, arguing that Utah law prohibits attorneys from recovering their own attorney fees for representing themselves pro se. Westmont's motion made no argument that the district court's award of sanctions was in error due to lack of notice and a hearing. The district court denied Westmont's motion, ruling that the bar against the recovery of fees by pro se attorneys did not apply because the court had not awarded Vance his attorney fees as the prevailing party in the litigation but rather as a sanction against Westmont for "filing their frivolous claim and wasting the time of both the Court and [Vance]." The district court explained that it had simply used Vance's hours and billing rate "as the basis for setting an appropriate amount for the sanction." Westmont now appeals, challenging both the district court's dismissal of its defamation claim and its award of attorney fees to Vance.

ISSUES AND STANDARDS OF REVIEW

¶10    Westmont argues that the district court erred in granting Vance's motion to dismiss. We review a district court's ruling on a motion to dismiss for correctness. *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 2, 290 P.3d 930. In particular, we review for correctness the district court's determination that the judicial proceedings privilege applies to Vance's letters. *See DeBry v. Godbe*, 1999 UT 111, ¶ 7, 992 P.2d 979.

¶11    Westmont also challenges the district court's award of sanctions against it to compensate Vance for the value of his own attorney time spent defending himself in this matter. We review a district court's imposition of sanctions under an abuse of discretion standard. *See Chen v. Stewart*, 2005 UT 68, ¶ 44, 123 P.3d 416.

ANALYSIS

I. Dismissal of Westmont's Defamation Complaint

¶12    Westmont first argues that the district court erred in granting Vance's motion to dismiss Westmont's defamation complaint. Specifically, Westmont argues that the district court erred in making its underlying determinations that Vance's letters were protected by the judicial proceedings privilege, that the letters had not been published to third parties, and that the letters did not contain defamatory statements. We need only address the applicability of the judicial proceedings privilege because our resolution of that issue in Vance's favor is determinative.

¶13    The judicial proceedings privilege is an absolute privilege protecting attorneys and others involved in litigation against suits arising from statements made related to the litigation. *See Price v. Armour*, 949 P.2d 1251, 1256 (Utah 1997) ("The general rule is that judges, jurors, witnesses, litigants, and counsel in judicial proceedings have an absolute privilege against defamation."

(citation and internal quotation marks omitted)). "To establish the judicial proceeding privilege, the statements must be (1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) be made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Krouse v. Bower*, 2001 UT 28, ¶ 8, 20 P.3d 895 (citation and internal quotation marks omitted). Westmont's specific arguments against the application of the privilege in this case focus on the first and second prongs of this test.

¶14   Westmont first argues that the district court erred in concluding that Vance's letters were made during or in the course of a judicial proceeding. Westmont does not dispute "that a statement may qualify as made during or in the course of a judicial proceeding if the communication is preliminary to a proposed judicial proceeding." *Id.* ¶ 9. However, Westmont attempts to distinguish Vance's statements on the grounds that the Shurtliffs' small claims action against Westmont did not and—according to Westmont—could not directly allege forgery, fraud, or extortion; that the Shurtliffs did not make any criminal complaint against Westmont pertaining to charges of forgery, fraud, or extortion; that the Shurtliffs did not know that Westmont would bring an action against them; and that the Shurtliffs never formally alleged forgery, fraud, or extortion against Westmont in the district court.

¶15   We are not persuaded that any of these factors, alone or in combination, warrant a conclusion other than that reached by the district court. "[T]he publication of defamatory matter by an attorney is protected not only when made in the institution of proceeding or in the conduct of litigation before a judicial tribunal, *but in conferences and in communications preliminary thereto*." *Id.* (emphasis added) (citation and internal quotation marks omitted). It is clear that Vance's statements regarding the contested second lease pertained to an existing legal dispute between the Shurtliffs and Westmont that ultimately ripened into formal litigation. Vance's final letter expressly stated that the parties' dispute would have to be resolved in court. *Cf. id.* ("In the last line of the demand

letter in this case, [the attorney] suggested that he and his clients wished to avoid litigation, but that a judicial proceeding was an imminent possibility."). Further, the forgery question was actually litigated in the Shurtliff–Westmont case, resulting in a determination that there was no evidence that Westmont forged the lease. Under these circumstances, we agree with the district court that Vance's communications were made "preliminary to a proposed judicial proceeding" and were therefore "made during or in the course of a judicial proceeding" for purposes of the privilege. *Id.*

¶16　Westmont also argues that the allegedly defamatory statements in Vance's letters lack "some reference to the subject matter of the proceeding." *Id.* ¶ 8 (citation and internal quotation marks omitted). The thrust of Westmont's argument in this regard is that the Shurtliffs never alleged a formal claim of forgery, fraud, or extortion in the subsequent Shurtliff–Westmont litigation. However, "[a] statement need not be relevant or pertinent to the judicial proceeding from an evidentiary point of view for the privilege to apply." *DeBry v. Godbe*, 1999 UT 111, ¶ 16, 992 P.2d 979. Rather, "[s]tatements are relevant for purposes of the privilege if they simply have 'some relationship to the cause or subject matter involved.'" *Krouse*, 2001 UT 28, ¶ 12 (quoting *DeBry*, 1999 UT 111, ¶ 16). In this case, Vance's statements relate broadly to the overall dispute between the Shurtliffs and Westmont and specifically to the question of whether the second lease was valid. This is sufficient to satisfy the requirement that statements "have some reference to the subject matter of the proceeding." *Id.* ¶ 8 (citation and internal quotation marks omitted).

¶17　Westmont has failed to convince us that the district court erred in its conclusions that Vance's statements were preliminary to proposed or threatened litigation and that the statements referred to the subject matter of that litigation. We therefore affirm the district court's determination that Vance's statements are protected by the judicial proceedings privilege and the resulting dismissal of Westmont's defamation complaint against Vance.

## II. Sanctions

¶18   Westmont also challenges the district court's award of $2,600 in sanctions against it to compensate Vance for the time he spent defending himself in this matter. Westmont argues that the district court erred in awarding Vance his own attorney fees because he failed to request such fees in his motion to dismiss and because Utah law prohibits attorney fee awards to licensed attorneys for representing themselves pro se. Westmont also argues that the award cannot be upheld as a sanction because the district court failed to give Westmont notice and an opportunity to respond, in violation of its due process rights.

¶19   We agree with Westmont that Vance's motion to dismiss did not contain an express request for attorney fees—either based on prevailing party status or as a sanction[5]—and also that Utah law precludes prevailing-party attorney fee awards to pro se attorneys for successfully representing themselves in litigation. *See Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1374–75 (Utah 1996) (precluding award of contractual prevailing-party attorney fees to pro se attorney); *Smith v. Batchelor*, 832 P.2d 467, 473 (Utah 1992) (same under statutory attorney fee provision); *see also Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶¶ 89–99 (extending ban on attorney fee awards where an attorney jointly represents himself and a client against a common claim). Thus, the district court would have erred had it simply awarded the pro se Vance his attorney fees as the prevailing party in the lawsuit.[6]

---

5. Although Vance's motion to dismiss did not expressly ask for attorney fees, it did state that Westmont's defamation suit "smacks of bad faith on the part of [Westmont] and Attorney Schultz in an attempt to intimidate and/or harass Attorney Vance in light of his ongoing representation of the Shurtliffs in their legal dispute with [Westmont]."

6. An award of prevailing-party attorney fees would additionally have been improper because there is no contractual or statutory

(continued...)

¶20    However, the district court did not award Vance prevailing-party attorney fees, but rather awarded those fees to Vance as a sanction against Westmont. This is suggested by the district court's oral ruling, but any doubt was removed by the dismissal order's specific language awarding fees "[p]ursuant to the Court's inherent power to sanction."[7] Thus, Westmont's only argument on appeal that actually challenges the basis for the district court's attorney fee award is Westmont's argument that the district court violated Westmont's due process rights by imposing sanctions without giving Westmont notice and an opportunity to respond.

¶21    We conclude that Westmont failed to preserve its due process issue for appeal because it failed to apprise the district court that the court had erred by imposing sanctions without the required notice and hearing. *See State v. Diaz-Arevalo*, 2008 UT App 219, ¶ 10, 189 P.3d 85 ("In order to preserve an issue for appeal, a defendant must raise the issue before the district court in such a way that the court is placed on notice of potential error and then has the opportunity to correct or avoid the error."); *see also State v. Dean*, 2004 UT 63, ¶ 13, 95 P.3d 276 ("A proper objection puts the judge on notice of the asserted error and allows the opportunity for correction at that time in the course of the proceeding." (citation and internal quotation marks omitted)). Westmont could have

---

6. (...continued)

basis for such an attorney fee award in this case. *See Anderson & Karrenberg v. Warnick*, 2012 UT App 275, ¶ 9, 289 P.3d 600 ("As a general rule, attorney fees are recoverable only if authorized by contract or statute."). We express no opinion on whether Vance's failure to expressly request attorney fees in the district court would have precluded an award of prevailing-party attorney fees if such an award had been otherwise proper.

7. In light of this express language in the district court's November 22, 2011 dismissal order, we reject Westmont's argument in its reply brief that it "never learned that the court was claiming that it was imposing sanctions on Westmont until it received the court's [March 6, 2012] ruling on Westmont's Motion to Alter or Amend."

raised this objection immediately after the district court's oral ruling, in its objection to Vance's proposed dismissal order, or in its motion to alter or amend that order. *Cf. Dickman Family Props., Inc. v. White*, 2013 UT App 116, ¶¶ 12–13, 302 P.3d 833 (finding no preservation where appellants failed to raise an issue at contempt proceeding or in their objection to the contempt order). However, Westmont's failure to raise the issue to the district court despite multiple appropriate opportunities to do so constitutes a waiver of that issue, and we decline to address it on appeal. *See id.* ¶ 9 ("'Issues that are not raised [in the trial court] are usually deemed waived.'" (alteration in original) (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801)).[8]

CONCLUSION

¶22    We conclude that Vance's letters were protected by the judicial proceedings privilege, and we affirm the district court's dismissal of Westmont's defamation complaint on that basis. We also affirm the district court's award of attorney fees as a sanction against Westmont because Westmont waived its due process argument below when it failed to raise that argument to the district court. For these reasons, we affirm the district court's dismissal order, including its monetary sanction against Westmont in the amount of $2,600.

---

8. To the extent that Westmont argues that the district court's imposition of sanctions was substantively improper, that issue was also not preserved for appeal.