**2014 UT App 184**

## THE UTAH COURT OF APPEALS

WESTMONT MIRADOR LLC,
Plaintiff, Appellant, and Cross-appellee,
*v.*
MATTHEW SHURTLIFF, WHITNEY SHURTLIFF, AND SYDNIE
SHURTLIFF,
Defendants, Appellees, and Cross-appellants.

Opinion
No. 20130213-CA
Filed August 7, 2014

Second District Court, Ogden Department
The Honorable W. Brent West
No. 110901882

Charles A. Schultz, Attorney for Appellant and
Cross-appellee

Dwayne A. Vance, Attorney for Appellees and
Cross-appellants.

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGE GREGORY K. ORME and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

GREENWOOD, Senior Judge:

¶1     Westmont Mirador LLC (Westmont), Matthew and Whitney
Shurtliff (the Shurtliffs), and Sydnie Shurtliff (Sydnie) raise several

---

1. The Honorable Pamela T. Greenwood and the Honorable Russell
W. Bench, Senior Judges, sat by special assignment as authorized
by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

arguments on appeal arising from the trial court's decision on a disputed residential rental agreement. We affirm.

BACKGROUND

¶2 The Shurtliffs, as renters, signed a uniform residential rental agreement with Westmont, as landlord, on August 6, 2009, that expired by its own terms on August 31, 2010 (the August agreement). In conjunction with the August agreement, the Shurtliffs paid Westmont a $300 deposit, $150 of which was nonrefundable. They paid Westmont an additional $200 nonrefundable pet fee on October 19, 2009, when they got a dog. The Shurtliffs paid rent through August 31, 2010, and moved out sometime before that date.

¶3 Westmont filed a lawsuit against the Shurtliffs and Sydnie, in her capacity as the Shurtliffs' guarantor, based on its contention that the Shurtliffs signed a new uniform residential rental agreement on October 19, 2009, when they submitted their $200 pet fee, and that the October agreement extended the term of their lease through November 30, 2010 (the October agreement). Westmont produced a document that it claims is a copy of the October agreement, bearing the Shurtliffs' signatures. The Shurtliffs denied ever signing this agreement and disavowed the authenticity of the signatures on the document.

¶4 Westmont's claims against the Shurtliffs totaled $1,212.14 for breach of the October agreement. It sought reimbursement for $181.92 in lost rent, $650 for repayment of a rent special that the Shurtliffs' breach disqualified them for, $150 for the cost of re-renting the unit, $300 for damages to the unit, and $80.22 for unpaid utilities, minus the $150 refundable portion of the Shurtliffs' initial security deposit.

¶5 The trial court made "no finding as to whether or not the October [agreement] was a forgery or a valid contract" but noted "that there is no evidence that Westmont, or [anyone] representing Westmont either forged the October [agreement], or had any

motivation to do so." At the same time, the court declined to find that the Shurtliffs signed the October agreement and denied Westmont's claims for damages based on a breach of the October agreement. The court adjudicated the rights of the parties with reference to the August agreement and awarded Westmont $300 for damages done to the unit during the Shurtliffs' tenancy, $80.22 for the unpaid utilities, and $160 for costs incurred in litigating the case. The trial court applied the $150 refundable portion of the Shurtliffs' security deposit toward the judgment, bringing the total judgment to $390.22. The trial court recognized that the August agreement "specifically provides for the award of attorneys fees to the prevailing party" but declined to award any based on its determination that "[n]either side prevailed completely." Westmont appeals the trial court's ruling, and the Shurtliffs and Sydnie cross-appeal.

ISSUES AND STANDARDS OF REVIEW

¶6      Westmont, the Shurtliffs, and Sydnie challenge the trial court's refusal to award attorney fees, each asserting a claim for attorney fees under the August agreement as the prevailing party. A trial court's determination of which party, if any, is the prevailing party entitled to attorney fees under a contract "is a decision left to the sound discretion of the trial court and reviewed for an abuse of discretion." *Giles v. Mineral Res. Int'l, Inc.*, 2014 UT App 37, ¶ 9, 320 P.3d 684 (citation and internal quotation marks omitted); *see also Neff v. Neff*, 2011 UT 6, ¶ 48, 247 P.3d 380.

¶7      Next, Westmont challenges the trial court's failure to find that the Shurtliffs signed the October agreement. "Failure of the trial court to make findings on all material issues is reversible error." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 59, 216 P.3d 929 (citation and internal quotation marks omitted). However, "[i]t is sufficient if from the findings [the trial court] makes there can be no reasonable inference other than that it must have found against such allegations." *Id.* (citation and internal quotation marks omitted).

¶8 Last, Westmont contends that the trial court erred by refusing to impose rule 11 sanctions against Sydnie and her attorney for filing an untimely motion to alter or amend the judgment. "In reviewing a trial court's determination of whether a rule 11 violation has occurred, we apply different standards of review to different aspects of that determination. Findings of fact are reviewed under a clear error standard, while conclusions of law are reviewed for correctness." *Archuleta v. Galetka*, 2008 UT 76, ¶ 6, 197 P.3d 650.

¶9 On cross-appeal, in addition to their claim for attorney fees, the Shurtliffs argue that the trial court erred by failing to apply the nonrefundable portion of their security deposit toward the damages the trial court awarded Westmont. "If a contract is unambiguous, a trial court may interpret the contract as a matter of law, and we review the court's interpretation for correctness." *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 134 (Utah 1997) (citation and internal quotation marks omitted).

ANALYSIS

I. Attorney Fees

¶10 "In Utah, attorney fees are awardable only if authorized by statute or contract." *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119 (citation and internal quotation marks omitted). Here, the August agreement contains an attorney fees provision that states, in relevant part,

> If legal action is taken by either party to enforce this agreement, or to enforce any rights arising out of the breach of this agreement . . . , the prevailing party shall be entitled to all costs incurred in connection with such action, including a reasonable attorney's fee, court costs, filing fees, interest, and collection costs, with or without suit.

Both Westmont and the Shurtliffs assert that they were the prevailing party as to their claims against each other and that they are accordingly entitled to an award of fees under the August agreement. Sydnie asserts that she prevailed on Westmont's claim against her and is therefore also entitled to attorney fees under the August agreement.

A.     Westmont's and the Shurtliffs' Claims for Attorney Fees

¶11     Identification of which party prevailed, for purposes of awarding attorney fees, may not be "manifestly obvious," in which case, "when interpreting contractual 'prevailing party' language, a court should employ a flexible and reasoned approach" that allows room for common sense to guide a court's decision. *Giles v. Mineral Res. Int'l, Inc.*, 2014 UT App 37, ¶ 10, 320 P.3d 684 (citations and internal quotation marks omitted). A court "should take into consideration the significance of the net judgment in the case and the amounts actually sought[,] . . . balanc[ed] . . . proportionally with what was recovered." *Id.* (alterations and omissions in original) (citation and internal quotation marks omitted). Other factors a trial court may consider in identifying a prevailing party include,

> (1) contractual language, (2) the number of claims, counterclaims, cross-claims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.

*R.T. Nielson*, 2002 UT 11, ¶ 25. A trial court may also appropriately conclude that a case is a draw "where both parties obtain mixed results" and in those cases, it may decline to award attorney fees entirely, regardless of applicable statutory or contractual language entitling a prevailing party to fees. *Neff v. Neff*, 2011 UT 6, ¶ 70, 247 P.3d 380; *see also A.K. & R. Whipple Plumbing & Heating v. Guy*, 2004 UT 47, ¶ 22, 94 P.3d 270.

¶12    Here, the trial court declined to award attorney fees to either Westmont or the Shurtliffs because "[n]either side prevailed completely" and the issues on which it awarded damages to Westmont were "only remotely related to the enforcement of the lease agreement." The court stated, "To be candid, this case should have remained in the Small Claim's Court. The attorney's fees incurred in this case, by both parties, are disproportionate to the net award." And "prior to trial, the Court advised both counsel that the attorney's fees being incurred were disproportional to any amount that the Court would award either party should they prevail." Both parties accepted that risk, explaining that they were interested in resolving "issues of principle."

¶13    Ultimately, the court awarded Westmont less than one-third of the damages it requested, and the amounts awarded had nothing to do with the issue at the heart of its case—the validity of the October agreement. Westmont explained that its primary goal at trial was to disprove "libelous statements" that Westmont had forged the Shurtliffs' signatures on the October agreement. Because the damages awarded were unrelated to Westmont's primary theory at trial, the trial court could reasonably conclude that Westmont did not prevail and was not entitled to prevailing party attorney fees.[2] Likewise, the Shurtliffs did not prevail on their

---

2. Westmont also argues that the trial court erred by denying its request to recover costs incurred in calling an out-of-state resident to testify at the trial in Utah. Westmont identifies an error in the trial court's ruling on its post-trial motion to amend the judgment in which the court admonishes Westmont for failing "to file a motion and seek Court assistance" in securing alternatives to the witness's in-person testimony at trial. Westmont did submit such a motion and the trial court neglected to rule on it. However, Westmont does not present any argument as to how this oversight by the trial court entitles it to recover its costs. Any entitlement Westmont may have to recover costs under the August agreement is conditioned upon its being the prevailing party at trial, as was the case with its entitlement to attorney fees. For the same reasons

(continued...)

cross-claim that the entire $300 security deposit and the $200 pet fee should be used to satisfy Westmont's damages award and that Westmont should be ordered to refund the Shurtliffs $109.78 as the remainder of their refundable security deposit. Although Westmont's failure to prove its arguments related to the October agreement can, in a sense, be equated to the Shurtliffs prevailing on that issue, the Shurtliffs were nonetheless saddled with a $390.22 judgment against them.

¶14    We are satisfied that the trial court based its prevailing party determination on adequate consideration of the factors outlined above.[3] We affirm the trial court's decision that neither party was entitled to attorney fees as the prevailing party and decline to award either party attorney fees on appeal. *See Neff*, 2011 UT 6, ¶ 70.

B.    Sydnie's Claim for Attorney Fees

¶15    Sydnie asserts that under the clear terms of the August agreement, she prevailed on all claims brought against her by Westmont, making her the prevailing party as to the claims in

---

2. (...continued)
we affirm the trial court's prevailing party determination, we also affirm its denial of costs to Westmont.

3. Westmont also asserts that it is entitled to attorney fees based on the trial court's awarding it post-judgment costs pursuant to the provisions of the August agreement. It also argues that the trial court abused its discretion by basing its denial of Westmont's request for attorney fees on the court's "anger and frustration of having to deal with this case." Westmont offers no support for and little analysis of these arguments. *Cf. Teachers4Action v. Bloomberg*, 552 F. Supp. 2d 414, 416 (S.D.N.Y. 2008) (recognizing that a trial judge's angry or impatient reactions may, at times, "be called for or understandable"). Accordingly we do not address them. *See* Utah R. App. P. 24(a)(9) (explaining the elements of an adequately presented argument).

which she was involved. The trial court rejected her post-judgment request for fees as untimely, stating, "Had the issue been pursued at trial, the Court would have considered it, but, for whatever reasons, the attorneys' fees were not requested. The Court has no inclination to reconsider the issue now."

¶16    A prevailing party waives the right to attorney fees upon "the signed entry of final judgment or order, at which time trial issues become ripe for appeal and a party may file a timely notice of appeal pursuant to the Utah Rules of Appellate Procedure." *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 117 (Utah 1998); *see also DFI Props. LLC v. GR 2 Enters. LLC*, 2010 UT 61, ¶ 18, 242 P.3d 781 (explaining that the requirement that the prevailing party submit a request for attorney fees before the entry of a final judgment prevents "piecemeal appeals" because otherwise "every case involving attorney fees could potentially be the genesis of two separate appeals—one appeal related to the merits and one appeal related to the attorney fees award" (citation and internal quotation marks omitted)). Sydnie first requested attorney fees in a post-trial motion dated August 23, 2012. The trial court entered a signed, final judgment on July 26, 2012. In her appellate briefing, Sydnie does not address the trial court's determination that her request was untimely or otherwise assert any reason why this long-standing rule should not apply here. Accordingly, we will not disturb the trial court's denial of Sydnie's request for attorney fees.

## II. Westmont's Remaining Challenges

¶17    Last, Westmont challenges the trial court's finding that it failed to submit sufficient evidence to prove that the Shurtliffs signed the October agreement. It also challenges the trial court's failure to impose sanctions against Sydnie and her attorney.

### A.    Findings

¶18    Westmont asserts that "[t]he indisputable facts of this case prove that the Shurtliffs signed the October [agreement] with Westmont, and the district court's failure to find that they did so, is against the weight of the indisputable evidence."

> Although it is error for a court to fail to make findings on all material issues raised by the pleadings this does not mean that the court must negative every allegation contained in the pleadings. It is sufficient if from the findings it makes there can be no reasonable inference other than that it must have found against such allegations.

*Patton v. Kirkman*, 167 P.2d 282, 283 (Utah 1946).

¶19    In its written Findings of Fact, the trial court stated, "The Court makes no finding as to whether or not the October [agreement] was a forgery or a valid contract. However, the Court finds that there is no evidence that Westmont, or [anyone] representing Westmont either forged the October [agreement], or had any motivation to do so." In its final judgment, the trial court elaborated, "[T]his case had a great deal of emotion attached to it, by all parties . . . [, and as] indicated at trial, [Westmont] felt that its integrity had been challenged with allegations of fraud. Therefore, the Court's finding on the allegation of alleged fraud is appropriately included in the Findings and Conclusions." Further, the judge explicitly ruled at trial that Westmont failed to satisfy its burden of proof and establish by a preponderance of the evidence that the Shurtliffs did sign the document, stating, "I've got to be persuaded by . . . a preponderance of the evidence that [the October agreement] either was a forgery or it was signed and neither one of you carried your burden of proof on that and [are both] hurt by the fact that I don't have an original document to look at." *See generally Koesling v. Basamakis*, 539 P.2d 1043, 1046 (Utah 1975) ("[W]here . . . the proponent has the burden of persuading the trier of fact by a preponderance of the evidence, that is, that the asserted proposition is more likely than not, he carries that burden throughout the trial.").

¶20    The court explained its determination, recognizing that "[t]he evidence on whether or not [the October agreement] was a forgery or whether or not it was signed . . . goes back and forth." The court found credible the evidence supporting the Shurtliffs' position that they did not sign the document but also recognized

that there was no evidence to support a finding that Westmont forged the document. The court observed that each party's theory was reasonable and recognized that if the parties are unable to "explain why that copy [of the October agreement] is floating around, [the court] surely [could not] divine how it came into creation." Accordingly, the trial court's findings are adequate under the circumstances.[4] *See Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 601 (Utah 1983) ("Substantial compliance with Rule 52(a) [of the Utah Rules of Civil Procedure] does not . . . require that the trial court negative every allegation contained in the pleadings; rather, the Rule is satisfied if, from the findings it (the trial court) makes, there can be no reasonable inference other than that it must have found against such allegations.").

B.     Sanctions

¶21    Westmont appeals the trial court's denial of sanctions against Sydnie for filing a motion to amend the judgment two days

---

4. We decline to indulge Westmont's claim, occupying fifteen pages of its opening brief, that "the Shurtliffs have told so many lies in this case that nothing they say should be believed." *Cf. Mason v. Smithkline Beecham Corp.*, 596 F.3d 387, 389 (7th Cir. 2010) (admonishing the parties for submitting briefs "replete with argumentative posturing" (internal quotation marks omitted)); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 n.8 (Ind. Ct. App. 2002) ("Statements that amount to name-calling are not appropriate in appellate argument."). At best, this amounts to a challenge of the Shurtliffs' credibility, the determination of which we accord significant deference to the trial court. *See State v. Pinder*, 2005 UT 15, ¶ 66, 114 P.3d 551. This animosity between the parties is not a new development. *See Westmont Maint. Corp. v. Vance*, 2013 UT App 236, ¶¶ 7 n.4, 22, 313 P.3d 1149 (noting that the trial court awarded attorney fees as a sanction against Westmont for filing a defamation claim against the Shurtliffs' attorney based on the court's observation that the case was an "egregious and unwarranted use of legal process, a waste of judicial resources, and an undue imposition upon" the Shurtliffs' attorney).

late and in the face of "sixty years" of precedent "unequivocally" requiring that such a motion be filed within ten days of entry of the judgment. Rule 11 of the Utah Rules of Civil Procedure allows the trial court to sanction a party that the court determines has filed a motion or other document with the court "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" or if "the claims, defenses, and other legal contentions" contained in the filing are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Utah R. Civ. P. 11(b), (b)(1), (b)(2), (c). "Decisions regarding rule 11 sanctions are best left in the hands of the trial court. We therefore accord reasonable discretion to the trial court to determine when sanctions are useful and appropriate." *Archuleta v. Galetka*, 2008 UT 76, ¶ 7, 197 P.3d 650.

¶22 Here, the trial court stated, "[Sydnie]'s motion to amend or alter the judgment simply does not justify Rule 11 sanctions. The motion appears to have been brought in good faith, has legal merit and was simply in response to [Westmont's] motion to reopen the judgment and allow attorneys' fees." The record supports this determination. Sydnie titled the challenged filing as, "Memorandum in Opposition to Plaintiff's Motion to Alter Or Amend and in Support of Sydnie Shurtliff's Motion to Amend Judgment." The entirety of the memorandum supporting Sydnie's motion, minus two paragraphs occupying half of one page in the ten-page document, consists of her arguments in response to Westmont's motion to amend or alter judgment. The other two paragraphs contain Sydnie's request for attorney fees and constitute the entirety of Sydnie's argument in support of her own motion to amend. As indicated previously, the trial court considered Sydnie's claim for attorney fees to possibly have merit but determined that her request was untimely. Accordingly, we affirm "the trial court's ultimate determination regarding the usefulness of sanctions in this situation." *See id.* ¶ 8.

III. The Shurtliffs' Cross-Appeal

¶23     In their cross-appeal, the Shurtliffs argue that the trial court erred by applying only the refundable portion of their security deposit toward the damages the court awarded to Westmont, rather than the refundable and nonrefundable amounts, as well as the nonrefundable $200 pet fee. The Shurtliffs' argument depends upon their characterization of the security deposit provision in the August agreement as ambiguous, and they urge this court, in light of the provision's alleged ambiguity, to construe the provision in their favor and against Westmont as the drafter. *Cf. Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah Ct. App. 1988) ("[T]he doctrine of construing ambiguities in a contract against the drafter functions as a kind of tie-breaker, used as a last resort by the fact-finder after the receipt and consideration of all pertinent extrinsic evidence has left unresolved what the parties actually intended.").

¶24     We conclude that the security deposit provision is not ambiguous. The August agreement outlines that $150 of the $300 security deposit is refundable and $150 is nonrefundable. The terms of the agreement provide, "The Security Deposit . . . shall secure the performance of Resident's obligations. *Refund* of Security Deposit is dependent upon Resident fulfilling ALL of the following conditions"—referring to things like the cleanliness of the unit at the time the tenants vacate—"and failure to meet these conditions will *forfeit* the Security Deposit." (Emphases added.) By the plain language of the terms of the agreement, only the $150 refundable portion of the security deposit is capable of being refunded or forfeited; the nonrefundable half, unsurprisingly, is not refundable regardless of whether the Shurtliffs fulfilled their obligations under the agreement. Furthermore, the Shurtliffs have not directed us to any authority requiring Westmont, as the landlord, to use the nonrefundable part of the security deposit toward repairs beyond those constituting normal wear and tear that were precipitated by the Shurtliffs during their tenancy. Nor have the Shurtliffs directed us to any authority indicating that application of the nonrefundable part of the security deposit is a prerequisite to Westmont's use of the refundable funds for the same types of repairs. The Utah Code provisions cited by the Shurtliffs only require that landlords inform

tenants in writing to explain "why any deposit refundable under the terms of the lease . . . is being retained," Utah Code Ann. § 57-17-1 (LexisNexis 2012), and for landlords to clearly inform a prospective tenant if a portion of the security deposit is nonrefundable, *id.* § 57-17-2.

¶25    The Shurtliffs argue that the $200 nonrefundable pet fee they paid should also be applied toward the damages award. The Pet Rental Agreement, however, clearly indicates that the Shurtliffs' up-front payment of $200 is a "[n]on-refundable pet fee," which, in conjunction with the $20 monthly pet rent, constitutes the price Westmont placed on granting the Shurtliffs "the privilege of keeping [a] pet in the apartment." The Pet Rental Agreement also explains that "any damages done by [the] pet will be subject to the same provisions as the Security Deposit described in the . . . Uniform Residential Rental Agreement," meaning that any damage to the apartment, regardless of whether an animal or human occupant caused the damage, would be covered by the security deposit provisions in the August agreement. Accordingly, the trial court did not err by crediting only the refundable portion of the security deposit to the damages assessed against the Shurtliffs.[5]

CONCLUSION

¶26    We affirm the trial court's decision to deny Westmont and the Shurtliffs attorney fees based on its determination that neither party was the prevailing party. We also affirm its decision to deny Sydnie's request for attorney fees as untimely. The trial court did not err by refusing to enter a finding as to whether the Shurtliffs actually signed the October agreement given its determination that Westmont failed to satisfy its burden of proof on the issue.

---

5. Although we reject the Shurtliffs' argument on this point, we do not consider the Shurtliffs' cross-appeal of this issue to be frivolous, as suggested by Westmont, and we deny Westmont's request for double its costs pursuant to rules 33 and 34 of the Utah Rules of Appellate Procedure. *See generally* Utah R. App. P. 33; *id.* R. 34.

Westmont's request for sanctions against Sydnie was properly denied by the trial court. Finally, the trial court correctly applied only the refundable portion of the Shurtliffs' security deposit toward the damages the court awarded to Westmont. Affirmed.

————